RELIGIOUS TECHNOLOGY CENTER, a California non-profit corporation, and Bridge Publications, Inc., a California non-profit corporation, Plaintiffs,

v.

F.A.C.T.NET, INC., a Colorado corporation; Lawrence Wollersheim, an individual; and Robert Penny, an individual, Defendant.

Civ. A. No. 95–K–2143.

United States District Court,
D. Colorado.

Oct. 3, 1995.

Todd P. Blakely, Robert R. Brunelli, Sheridan Ross & McIntosh, Denver, CO, Jeffrey A. Chase, Ann B. Frick, Jacobs Chase Frick Kleinkopf & Kelley, Denver, CO, Earl C. Cooley, Cooley, Manion, Moore & Jones, P.C., Boston, MA, Helena K. Kobrin, North Hollywood, CA, for Plaintiffs.

Thomas B. Kelley, Natalie Hanlon–Leh, Faegre & Benson, Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER ON VARIOUS MOTIONS

KANE, Senior District Judge.

On August 21, 1995 Religious Technology Center ("RTC"), a California non-profit corporation, filed a verified complaint against Lawrence Wollersheim, Robert Penny and F.A.C.T.NET, Inc. ("FACTNET") for injunctive relief and damages for copyright infringement (17 U.S.C. § 501) and trade secrets misappropriation (Colo.Rev.Stat. § 7–74–102). On October 2, 1995, RTC and an additional party, Bridge Publications, Inc., filed an amended complaint, but this event has no effect on the pending motions.

Jurisdiction is based on 28 U.S.C. §§ 1331 and 1338(a) and (b) in that this is an action for copyright infringement under 17 U.S.C. § 501. Supplemental jurisdiction under 28 U.S.C. § 1367 is asserted over the trade secrets misappropriation claim, which RTC alleges arises out of the same transaction and occurrences.

## I. *Background.*

On August 21, 1995, Judge Babcock, ruling on *ex parte* motions, granted a temporary restraining order against Defendants. His order restrained Defendants from the unauthorized copying, use or reproduction of the Works identified in Exhibit "A" to the complaint or any other part of the works that are part of the Advanced Technology, in particular the copying into "any computer data base, information service, storage facility, archives, or other computerized network or facility." The order further restrained the destruction or concealing by Defendants of such Works in their possession. It also required RTC to file a bond in the amount of $10,000 with the court forthwith. Judge Babcock set a hearing for a preliminary injunction before me due to his being unavailable on that date.

Judge Babcock ordered Defendants to deliver the infringing articles within their possession and control into the custody of RTC's counsel. In this regard, he issued a writ of seizure and ordered a portion of the court file sealed until execution of the writ of seizure.

On August 22, 1995, extensive materials, including computer equipment, computer software and voluminous documents were seized from Defendants' premises pursuant to the writ. They were placed in the custody of RTC's counsel who proceeded to search for allegedly infringing materials.

The preliminary injunction hearing took place before me on September 8, 11, and 12, 1995. At the termination thereof, I issued an oral ruling. I denied RTC's request for a preliminary injunction and ordered RTC to return and restore to the Defendants all seized materials. I ordered Defendants to maintain the *status quo* as to the possession of all copyrighted materials at issue in the case and restricted each of Defendants to making only fair use of the materials. I reserved my right to clarify my oral order with a written opinion. I denied RTC's request for a stay pending its appeal of the order.

On September 13, 1995, RTC filed an emergency motion with the United States Court of Appeals for the Tenth Circuit for a stay pending appeal of the order denying preliminary injunction and ordering return of seized materials. On that day, the Tenth Circuit temporarily stayed the September 12, 1995 order and directed Defendants to respond to the emergency motion by noon on Friday September 15, 1995.

On September 15, 1995, I clarified my oral order with a written memorandum opinion and order. I memorialized my oral orders denying RTC's motion for preliminary injunction; requiring RTC to return and restore to Defendants immediately and at RTC's expense all seized materials in the condition they were when taken and to the precise places from which they were taken; ordering Defendants to maintain the *status quo* as to their possession of all copyrighted materials at issue in this case and restricting them to making only fair use thereof; and prohibiting Defendants from making any additional copies of the materials or transferring them in any manner or publicizing them other than in the context of fair use. (Mem. Op. & Order at 18.)

On September 15 and September 18, 1995, RTC filed supplemental memoranda in support of its motion for stay of the order pending appeal. On September 18, 1995, the Tenth Circuit granted RTC's motion to place Exhibit 8 of Defendants' appendix under seal but dissolved the temporary stay entered on September 13, 1995 and denied RTC's motion for stay pending appeal.

RTC filed an application for a stay of my order before the United States Supreme Court, Justice Breyer, Circuit Justice for the Tenth Circuit Court of Appeals. On September 20, 1995, Justice Breyer denied the request for a stay. On September 21, 1995, RTC renewed its application to the Supreme Court and requested it be addressed to Justice Souter. (To my knowledge no action on this application has occurred.)

On September 22, 1995, RTC's counsel agreed the seized materials would be returned on September 25, 1995 at 2:00 p.m. Defendants demanded that all copies made of seized materials be returned as well. At that scheduled date and time, RTC's counsel, two RTC representatives and two of its computer experts appeared at the offices of Defendants' counsel.

RTC maintains it tendered to Defendants' counsel the remaining[1] computerized equipment and items in its possession with the exception of:

a. One floppy disk which contained Advanced Technology ("AT") materials. RTC asserts the disk has been copied and a disk with the AT document removed has been given to Defendants.

b. Two computer tapes which contained AT materials. RTC asserts exact duplicate tapes have been given to Defendants with only the AT materials deleted.

c. One computer CD on which AT materials were found. RTC asserts the CD has not been copied as a duplicate CD cannot be made.

d. The original hard drives of two computers which contained AT materials. RTC asserts an identical hard drive has been secured for Wollersheim's hard drive, and an equivalent for Penny's. It maintains the entirety of the original two hard drives has been copied into the duplicate hard drives which have been installed in their computers and returned to them with only the AT materials deleted.

On September 25, 1995, RTC filed Plaintiff's Motion for an Order Concerning Full Compliance with the Court's Order of September 15, 1995, Directing Return of Seized Materials and for an Order on New Issue Regarding Relief from Violation of First Amendment Ecclesiastical Rights. On September 26, 1995, RTC filed a Motion for Leave to Deposit Disputed Computer Media with Court under Seal. On that day, Defendants' filed Defendants' Application for Issuance of an Order to Show Cause re: Contempt as to Plaintiff's Willful Refusal to Comply with this Court's September 15, 1995 Order, and for Seizure of Defendants' Computer Hard Drives.

On September 27, 1995, I ordered RTC to appear on October 2, 1995 at 9:00 a.m. to show cause why it has not complied with my order of September 15, 1995 and why it should not be adjudged in contempt for failure to comply with the order. On October 2, 1995, RTC filed Plaintiff's Opposition to Defendants' Application for an Order to Show Cause re: Contempt. That day an evidentiary hearing took place on the contempt issue and I heard oral argument on the pending motions.

## II. *Discussion.*

RTC requests me to order that it has complied with the order of September 15, 1995 (incorporating my oral ruling of September 12, 1995) and to modify the order concerning those items which it has not returned. RTC also requests leave to deposit with the court under seal the "computer media" it has retained in its possession contrary to the order. Defendants on the other hand request me to find RTC in contempt for its willful refusal to comply with the order and to order the seizure of Defendants' computer hard drives.

■ RTC requests me to adjudge it in compliance with my order and to modify the order based on First Amendment issues which it submits were not raised or addressed at the preliminary injunction hearing.

RTC argues it is unable to comply with my order insofar as it requires RTC to return and restore to Defendants copies of AT materials which were seized because to do so would cause RTC's president to violate a fundamental religious belief of the Church of Scientology. RTC asserts a central tenet of the Scientology religion forbids all Scientologists from furnishing any copies of the AT materials to anyone who has not fulfilled the required spiritual and ethical prerequisites and any apostates of the religion. RTC maintains requiring compliance with the September 15, 1995 order would interfere with the Scientologists' right to exercise their religion freely as guaranteed by the First Amendment of the United States Constitution.[2]

---

1. On September 1 and September 5, 1995, RTC tendered certain disks, files, hard copy documents and computer equipment to defendants' counsel.

2. The First Amendment pertinently provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend I.

My order of September 15 (incorporating my oral ruling of September 12, 1995) stated pertinently: "Plaintiff is to return and restore to Defendants immediately and at Plaintiff's expense all seized materials in the condition they were when taken and to the precise places from which they were taken." (Mem Op. & Order September 15, 1995.)

My order was inaccurate because it was phrased as an order to RTC to return the seized materials. This court has never authorized the possession by RTC of the materials.

Judge Babcock's August 21, 1995 order of seizure stated in pertinent part:

IT IS ORDERED THAT:

1. The Clerk of the Court issue a Writ directed to the United States Marshal or other on-duty or off-duty federal, state municipal law enforcement officer (hereinafter referred to collectively as a [sic] "law enforcement officers") assisted by counsel and representatives of the plaintiff, forthwith to seize and *deliver to the custody of counsel for the plaintiff* the articles identified in Paragraph 2 below infringing the copyrights in the literary works of L. Ron Hubbard or containing trade secret materials belonging to RTC.

. . . .

3. The Writ so issued shall further direct that the law enforcement officer(s) shall hold the articles so seized in a safe place and forthwith deliver all such articles so seized in a safe place and forthwith *deliver such articles to the custody of counsel for plaintiff.*

(Order to Clerk to Issue Writ for Seizure of Articles Infringing Statutory Copyright and Containing Misappropriated Trade Secrets and Order for Impoundment at 1–3) (emphasis added).

My order of return, although legalistically addressed to RTC, was intended to be directed to those persons to whom Judge Babcock had ordered the law enforcement officers to deliver the seized articles. Judge Babcock's order required the law enforcement officers to deliver the articles to counsel for RTC, rather than RTC itself. Compliance with my order of return created no obligation on the part of RTC to return materials. Rather, it required counsel for RTC, whom this court had authorized to take possession of the seized articles from the law enforcement officers, to do so. Accordingly, my order cannot be perceived as requiring RTC or any member of the Church of Scientology to violate any religious belief nor constitute a threat to a central tenet of the religion. For this reason, my order did not involve any First Amendment issue concerning the free exercise of religion nor can RTC be held in contempt for violating that order.

I expressly disapprove at the conduct of both counsel for Plaintiffs and Defendants in not complying with my September 15, 1995 order. That order required counsel for RTC to return and restore to Defendants immediately and at RTC's expense all seized materials in the condition they were when taken and to the precise places from which they were taken. Contrary to that order, and without requesting a modification thereof, Defendants' counsel suggested and Plaintiff's counsel agreed that the surrender be made at the offices of counsel for Defendants. (Mot. Leave Deposit Computer Media under Seal at 4) (Defs.' App. Issuance Order Show Cause, Ex. I.) Such conduct amounts to a disregard of court authority.

At the evidentiary hearing on the issue of contempt, Wollersheim testified he has been unable to operate his computer with the replacement hard drive which RTC installed in place of his own. He also stated not all items seized were returned to him in the condition in which they were seized. This testimony was contradicted by that of RTC's witnesses including its computer experts who maintain the equipment is fully operational.

Defendants' computer expert, Professor Gary Nutt of the University of Colorado Department of Computer Sciences, testified he would be able to copy the entirety of the two original hard drives in issue which have not been returned into two duplicate hard drives with the AT materials deleted in a manner that would result in the computers containing the duplicate hard drives being fully operational.

RTC's counsel proposed at the hearing that the original hard drives be placed under the supervision of this court under seal and that Professor Nutt be requested, at RTC's expense, to create two operable new hard drives deleting the AT materials at issue, which hard drives could then be provided to Wollersheim and Penny for their use pending the outcome of this litigation.

The matters raised concerning compliance with my September 15, 1995 involve complicated issues which demand an exceptional knowledge of computer expertise for their resolution. I am concerned that this litigation should proceed in an orderly manner in accordance with prevailing law as well as the orders of the Tenth Circuit and of this court.

The Tenth Circuit, in its order of September 18, 1995, granted the motion to place exhibit 8 of Defendants' appendix in the documents submitted to that court under seal. As I understand, that exhibit is the same as Defendants' Exhibit CC submitted to this court in the course of the preliminary injunction proceedings. It appears that the sealed materials contain, in part some of the AT materials at issue. Those materials are placed under seal in accordance with the order of the Tenth Circuit.

In light of the Tenth Circuit's September 18, 1995 order, any order mandating the return of the remainder of the AT materials at issue could have resulted in an unintentional disclosure of the information placed under seal. Further, the evidence presented at the October 2 hearing clearly demonstrates that First Amendment issues are hovering over pre-trial proceedings. While not now at issue, the concerns for protecting the constitutionally guarded right to the free exercise of religion must receive devoted attention. Allowing counsel for any party under these circumstances to have possession or control over the items seized and the information contained therein would be imprudent.

Pursuant to Federal Rule of Civil Procedure 53, I appoint Professor Gary Nutt of the University of Colorado as special master in this civil action with all and full powers contemplated by the rule. The reasonable fees of Professor Nutt and any expenses he incurs of whatever kind, including the rental or purchase of any necessary materials or the retention of any other experts or assistants, shall be paid by RTC. This reference is made based upon the exigencies of this case because the issues are complicated and exceptional conditions require it.

■ I order that all seized materials, including any computer equipment or media of any nature, and any copies which have been made thereof, which are currently in the possession of either counsel for RTC or counsel for Defendants be immediately placed in the custody of this court. They shall remain in the custody of this court until further order.

Those items which were seized but are currently in the custody of Defendants themselves, rather than their counsel, need not be placed in the custody of the court but may be retained by Defendants subject to the provisions of my September 15, 1995 order. That order required Defendants to maintain the *status quo* as to their possession of all copyrighted materials at issue in this case and restricted them to making only fair use thereof. It prohibited Defendants from making any additional copies of the materials or transferring them in any manner or publicizing them other than in the context of fair use.

Any party may submit requests for materials, in addition to those ordered by the Tenth Circuit to be placed under seal to this court. Any party may, through counsel, make specific application for access to the materials placed in the court's custody pursuant to this order. The conditions to which such access will be subject will be specified by court order as need arises.

In his capacity as special master, Professor Nutt shall examine all materials placed in the custody of this court, as well as any other materials or equipment he deems necessary, and prepare a report concerning the condition in which materials were seized and the condition in which they were returned. He shall, *inter alia*, examine the two original hard drives which were not returned to Defendants and take all measures necessary to determine if they have been modified in any

manner. If he is able to create two operable replacement hard drives deleting the AT materials at issue, Professor Nutt shall do so. The operational replacement hard drives shall then be provided to Wollersheim and Penny for their use pending the outcome of this litigation. Additionally, Professor Nutt is directed to restore the complete operations of Defendants to the full degree of function that existed immediately before the several items were seized using the replacement hard drives and not using or permitting access to AT materials at issue. If Professor Nutt is not able to achieve this restoration in an efficient and timely manner, he shall so report to the court and further hearings will be scheduled on a priority basis.

I defer any order on issues of contempt or sanctions until I have considered the report of the special master.